UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


BERNETTA A. HENDERSON,                    08-CV-1139-BR

            Plaintiff,                    OPINION AND ORDER


v.


MICHAEL J. ASTRUE, Commissioner
of Social Security,

            Defendant.


**RICHARD A. SLY**
1001 S.W. 5th Avenue, Suite 310
Portland, OR  97204
(503) 224-0436

**LINDA S. ZISKIN**
Ziskin Law Office
P.O. Box 2237
Lake Oswego, OR  97035
(503) 889-0472

            Attorneys for Plaintiff


1 - OPINION AND ORDER

**DWIGHT C. HOLTON**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Office of the General Counsel
**MICHAEL S. HOWARD**
**RICHARD RODRIGUEZ**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2531

                    Attorneys for Defendant


**BROWN, Judge.**

        Plaintiff Bernetta A. Henderson seeks judicial review under

Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f, of

a final decision of the Commissioner of Social Security reducing

her Supplemental Security Income (SSI) payments to zero for

April 2003 through October 2004 due to her unstated or

"unearned"[1] income.  This Court has jurisdiction pursuant to 42

U.S.C. §§ 405(g) and 1383(c)(3).

───────────────

        [1] "Income is anything [the claimant] receive[s] in cash or in
kind that [the claimant[ can use to meet [her] needs for food and
shelter. . . .  In-kind income is not cash, but is actually food
or shelter, or something [the claimant] can use to get one of
these."  20 C.F.R. § 416.1102
        "Unearned income is all income that is not earned income."
20 C.F.R. § 416.1120.  It includes, *inter alia*, "support and
maintenance in kind.  This is food, or shelter furnished" to the
claimant.  20 C.F.R. § 416.1121.

2 - OPINION AND ORDER

Following a thorough review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further administrative proceedings.


## BACKGROUND

Plaintiff was born in 1961, has an eighth-grade education in special education, and has not done any past relevant work. Tr. 53, 196.[2]  On February 25, 2005, an Administrative Law Judge (ALJ) found Plaintiff had been disabled since April 21, 2003, due to mild mental retardation, antisocial personality traits, major depression, and polysubstance dependence in remission.  Tr. 196-98.  In April 1999 Plaintiff took the Wechshler Adult Intelligence Scale III assessment, and her verbal IQ was 61, performance IQ was 51, and full-scale IQ was 51.  Tr. 113, 197. In May 1999 her verbal IQ was 65, performance IQ was 63, and full- scale IQ was 61.  Tr. 113, 197.  In July 1999 a Vineland Adaptive Behavioral Scale test reflected Plaintiff had a second-grade reading level, a pre-school mathematical ability, and a "severe deficit in communication."  Tr. 113, 197.

In February 2001 a clinical psychologist, Gary Sacks, Ph.D., diagnosed Plaintiff with polysubstance abuse, borderline

_____

[2] "Tr." refers to the certified copy of the Transcript of Administrative Record submitted by Defendant on February 27, 2008, pursuant to 42 U.S.C. § 405(g).

intellectual functioning, and antisocial personality traits.  Tr.
115-18, 197.  On July 16, 2003, Dr. Sacks evaluated Plaintiff
again.  Plaintiff reported drugs and alcohol had not been a
problem since she had been through treatment in December 2002.
Tr. 148, 197.  Dr. Sacks noted Plaintiff's appearance suggested
she was sober. Tr. 148, 197.  He diagnosed Plaintiff with
polysubstance abuse in remission, borderline intellectual
functioning, learning disorder, and antisocial personality
traits.  Tr. 148, 197.

In addition to the above diagnoses, the ALJ relied on the
testimony of a medical expert, Dr. Davis, who testified
Plaintiff's IQ scores indicated mild mental retardation.
Tr. 197.  Dr. Davis also found Plaintiff had a learning disorder
that affects her ability to read and to do mathematics.  Tr. 197.
He stated Plaintiff reads at the second-grade level, and her
mathematical ability is at a pre-school level.  Tr. 197.
Dr. Davis opined Plaintiff had an "anti-social personality based
on her frequent incarcerations and her history of polysubstance
abuse." Tr. 197.

The ALJ took note of Plaintiff's long history of drug abuse
and criminal offenses.  Tr. 197.  The ALJ also noted when
Plaintiff entered treatment for methadone detox on May 25, 2004,
she "voiced a hope to change and appeared to have a high level of
commitment to gaining recovery skills." Tr. 197.  The ALJ found

4 - OPINION AND ORDER

credible Plaintiff's testimony that she is a slow learner and
that she has problems with depression and getting along with
others.  Tr. 197.  The ALJ also concurred with Dr. Davis's
opinion that "mild mental retardation as shown by a valid full-
scale IQ of 61 and her depression, learning disorder, and
antisocial personality . . . place additional and significant
functional limitations on her ability to work."  Tr. 198.  The
ALJ specifically cited Plaintiff's second-grade reading level and
pre-school mathematical ability as support for his findings.
Tr. 198.  Finally, the ALJ found Plaintiff "has impairments that
meet the criteria of § 12.05C of the impairments listed in
Appendix 1, Subpart P of the regulations."  Tr. 198.  Section
12.05C of the Listing of Impairments provides in relevant part:
"Mental retardation refers to a significantly subaverage general
intellectual functioning with deficits in adaptive behavior
initially manifested during the developmental period; *i.e.*, . . .
before age 22."  20 C.F.R. pt. 404, subpt. P, app. 1.

The ALJ also found Plaintiff's impairments met the
requirements for finding a personality disorder under § 12.08 of
the regulations.  Tr. 198.  Section 12.08 of the Listing of
Impairments provides in relevant part:  "A personality disorder
exists when personality traits are inflexible and maladaptive and
cause either significant impairment in social or occupational
functioning or subjective distress.  Characteristic features are

typical of the individual's long-term functioning and are not
limited to discrete episodes of illness." 20 C.F.R. pt. 404,
subpt. P, app. 1. The ALJ, therefore, concluded Plaintiff had
been disabled since April 21, 2003. Tr. 199.

On April 19, 2005, however, the Social Security Admini-
stration (SSA) notified Plaintiff that she was ineligible for SSI
benefits for April 2003 through October 2004 on the basis of
unstated or unearned income. Tr. 224-25. The SSA also
determined Plaintiff was ineligible for SSI payments for the
month of August 2003 because at the time she was fleeing a
criminal felony charge to avoid trial, to avoid jail, and/or to
avoid violation of a condition of her probation. Tr. 224.
Plaintiff timely filed a request for reconsideration of the SSA's
decision.

On June 13, 2005, the SSA upheld its denial of Plaintiff's
SSI benefits for the period at issue. Tr. 205. In its Notice of
Reconsideration, the SSA pointed out that Plaintiff "alleged to
have been staying in different motels all through 2003-2004 at a
rate of $55 per night, which comes out to about $1600/month."
Tr. 205. Relying on that statement by Plaintiff, the SSA
concluded Plaintiff had $1600 a month in unstated or unearned
income, which made her ineligible for SSI payments. Tr. 205.
Although the SSA makes reference to this statement by Plaintiff
in its June 13, 2005, Notice of Reconsideration, the Court notes

6 - OPINION AND ORDER

Plaintiff's statement is not otherwise a part of this record.

Plaintiff timely requested a hearing before an ALJ.
Tr. 208.  On November 6, 2007, an ALJ conducted a hearing at
which Plaintiff testified she had lived in various places from
April 2003 through October 2004, including motels, her sister's
home, and her cousin's home.  Tr. 20, 246-71.  She also stated
she paid for motel rooms with income earned from prostitution or
her clients paid for the motel rooms or she paid for rooms with
money from friends.  Tr. 255-56, 258, 260.  As noted, she also
testified she stayed in motel rooms less than half of the time
and sought the cheapest motels she could find (between $35 and
$45 a night).  Tr. 256, 258.  Plaintiff did not know how much
money she earned from prostitution, but she estimated earning
$100 to $200 a month.  Tr. 256, 262.  In any event, Plaintiff
testified she engaged in prostitution for only six months to one
year and that she had not engaged in prostitution since 2003.
Tr. 256.  At the hearing, Plaintiff acknowledged she was
convicted of selling $20 crack cocaine in 2004 and spent three
years in prison.  Tr. 264.

On March 18, 2008, the ALJ concluded the SSA properly
reduced Plaintiff's SSI payments to zero for the April 2003
through October 2004 on the basis of her unearned or unstated
income.  Tr. 21-22.  That decision, like the SSA's initial
eligibility decision, was based on a report found in "section D

of the modular disability folder" in which Plaintiff reported
"staying in different motels during the period at issue at a rate
of $55/night." Tr. 20. As noted, Plaintiff acknowledged earning
$100 to $200 a month from prostitution and staying in motels that
were $35 or $45 a night. Tr. 20, 256, 262. The ALJ pointed out
that Plaintiff also had a history of arrests and convictions for
theft and robbery and was convicted for selling drugs. Tr. 20,
174. In addition, the ALJ noted Plaintiff "reported using Soma,
Vicodin, and street methadone [in May 2004] in addition to use of
$100 of crack cocaine daily." Tr. 20, 166, 169.

The ALJ found Plaintiff's testimony "not fully credible in
light of various inconsistencies." Tr. 20. To support her
credibility finding, the ALJ again relied on Plaintiff's
statements contained in "section D of the modular disability
folder." Tr. 20. The ALJ found Plaintiff's testimony
inconsistent with her earlier statement that she "stayed only in
motels paid for with money she acquired from shoplifting and
[that] she had not stayed with family or friends." Tr. 20.
Although Plaintiff's niece submitted a letter stating that
Plaintiff stayed with her "off and on at various times," the ALJ
gave "little weight" to that statement because no specific dates
were provided. Tr. 21, 242.

The ALJ also found Plaintiff was vague and not forthcoming
regarding her unstated or unearned income from prostitution,

shoplifting, and selling drugs.  Tr. 20-21.  The ALJ noted Plaintiff testified she received income from prostitution and had a history of arrests for theft and robbery.  Tr. 20-21, 256.  As noted, Plaintiff acknowledged at the hearing that she was convicted of selling drugs.  Tr. 20-21, 264.  Finally, the ALJ noted in May 2004 Plaintiff reported using Soma, Vicodin, street methadone, and $100 of crack cocaine daily.  Tr. 20-21, 166.

The ALJ found Plaintiff's unstated or unearned income for the period of April 2003 through October 2004 exceeded the maximum SSI payment allowable for that period ($552 per month in 2003 and $564 per month in 2004).  Tr. 21.  The ALJ concluded even if a more "conservative estimate is used for motel rooms, i.e., $32 per night, . . . this would result in unearned income of $960 per month, also in excess of the maximum SSI payment allowable."  Tr. 21.  Thus, the ALJ found Plaintiff's income from prostitution, shoplifting, and selling drugs "likely exceed[ed] the SSI eligibility limits."  Tr. 21.  Finally, the ALJ suggested Plaintiff's reported cocaine use in May 2004 was consistent with an income of $3,000 a month, and Plaintiff reported supporting that habit by stealing.  Tr. 21, 169.  Accordingly, the ALJ concluded the Commissioner properly reduced Plaintiff's SSI payments to zero for April 2003 through October 2004.  Tr. 21.

Plaintiff timely requested the Appeals Counsel to review the ALJ's decision.  The ALJ's decision became the Commissioner's

final decision when the Appeals Council denied Plaintiff's
request for review on September 4, 2008.  Tr. 5-6.  *See* 20 C.F.R.
§ 416.1481.  *See also Russell v. Bowen*, 856 F.2d 81, 83-84 (9th
Cir. 1988).


## STANDARDS

SSI benefits may be available to individuals who are
65 or older, blind, or disabled, but who do not have insured
status under the Social Security Act.  42 U.S.C. § 1382(a).
To be eligible for SSI, the claimant's monthly income must be
below the amount of the SSI payment for the respective month.
42 U.S.C. § 1382(a)(1)(A).  *See also* 20 C.F.R. § 416.1100.
The individual SSI payment amount was $552.00 per month in
2003 and $564 per month in 2004.  Tr. 21.  *See* Program Opera-
tions Manual System (POMS), SI 02001.020.B.6, *available at*
https://secure.ssa.gov/apps10/poms.nsf/lnx/0502001020.  As noted,
income means both earned and unearned income under the Social
Security Act.  42 U.S.C. § 1382a(a).  "Income is anything you
receive in case or in kind that you can use to meet your needs
for food and shelter."  20 C.F.R. § 416.1102.  Income may be
legally or illegally obtained.  20 C.F.R. § 416.971.  *See also
Corrao v. Shalala*, 20 F.3d 943, 946 (9th Cir. 1994).  State

and local need-based aid is specifically excluded.  20 C.F.R.

10- OPINION AND ORDER

§ 416.1124(c)(2).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1039.  The ALJ is responsible for determining credibility, resolving conflicts in the record, and resolving ambiguities.  *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Martinez v. Heckler,* 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld if it is a rational interpretation of the evidence even if "the evidence is susceptible to more than one rational interpretation."  *Andrews,* 53 F.3d at 1039-40.  The reviewing court may not substitute its judgment for that of the Commissioner.  *Robbins v. SSA*, 466 F.3d 880, 882 (9th Cir. 2006).  Harmless errors do not change the outcome of a case and do not warrant reversal of the ALJ's decision.  *Stout v. Comm'r Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006).

## DISCUSSION

Plaintiff argues the Commissioner erred when he reduced Plaintiff's SSI benefits to zero for the period between April 2003 and October 2004 because the ALJ (1) improperly relied on evidence not in the record, (2) failed to consider Plaintiff's mental impairments when assessing the credibility of her testimony, (3) improperly discounted Plaintiff's testimony and a lay-witness statement, and (4) ignored medical evidence provided by Dr. Sacks, the consultive medical examiner.

## I.   **The ALJ erroneously relied on extra-record evidence.**

The ALJ's decision "must be based on evidence offered at the hearing or otherwise included in the record."  20 C.F.R. § 416.1453(a).  It is error to rely on evidence that is not in the record.  *Albalos v. Sullivan*, 907 F.2d 871, 874 (9th Cir. 1990).  Indeed, the Supreme Court held in *Goldberg v. Kelly* that procedural due process requires the determination of a recipient's eligibility for public benefits to be based "solely on the legal rules and evidence adduced at the hearing."  397 U.S. 254, 271 (1970).

Here the Commissioner acknowledges the ALJ relied on evidence that was not part of the administrative record.  Citing "section D of the modular disability folder," the ALJ repeatedly relies on Plaintiff's alleged statement about "staying in motels throughout 2003 and 2004 at a rate of $55 a night."  Tr. 20-21.

Citing another portion of that same "modular disability folder," the ALJ relies on Plaintiff's alleged statement admitting "from April 2003 through October 2004 she had stayed only in motels paid for with money she acquired from shoplifting and she had not stayed with family or friends."  Tr. 20.  Based on this "evidence," the ALJ concluded Plaintiff's unearned or unstated income exceeded the maximum SSI payment allowable for each and every month from April 2003 through October 2004.  Tr. 20-21. The ALJ also cites this "evidence" as support for finding Plaintiff's testimony not fully credible.  Tr. 20-21.  Although it is referenced in the SSA's June 12, 2005, Notice of Reconsideration, Tr. 205, neither "section D of the modular disability folder" nor any of the statements of Plaintiff set out in this section are part of this record.  Accordingly, the Court concludes the ALJ erred when he relied on extra-record evidence.

**II.  <u>The ALJ did not provide adequate reasons for discrediting Plaintiff's testimony</u>.**

The ALJ is responsible for evaluating the credibility of the claimant's testimony.  *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989)(citations omitted).  When assessing a claimant's credibility, the ALJ may rely on ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the claimant's symptoms, and other testimony by the claimant that appears less than candid.  *Smolen,* 80 F.3d at 1284 (citations omitted).  An

13- OPINION AND ORDER

ALJ's finding that a claimant is less than credible, however, must be supported by the record. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792-93 (9th Cir.1997).

Generally, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ must state "specific, cogent reasons for the disbelief" and "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). *See also Oteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995)(The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.").

Here the ALJ did not provide clear and convincing reasons supported by specific facts in the record for discounting Plaintiff's testimony. As noted, Plaintiff testified she stayed with relatives during the period at issue, that she stayed in motels less than half of the time, and that the motels were the cheapest she could find ($35 to $45 a night). Tr. 257-58. Plaintiff estimated she received $100 to $200 a month from prostitution, but she testified she engaged in prostitution for only six months to one year and had not engaged in any prostitution activity since 2003. Tr. 256. The ALJ found Plaintiff's testimony "not fully credible in light of various

inconsistencies." Tr. 20.  As noted, however, the only evidence the ALJ cites to support her finding as to the lack of Plaintiff's credibility is not in the record.  Moreover, the ALJ does not specifically identify any evidence in the record that undermines Plaintiff's testimony.

In addition, the ALJ failed to consider Plaintiff's mental impairments when she evaluated Plaintiff's credibility.  As noted, the Commissioner previously found Plaintiff reads at a second-grade level, has pre-school mathematical abilities, and has a severe deficit in her ability to communicate.  Tr. 197-98. Thus, it is undisputed that Plaintiff is disabled due to mild mental retardation and personality disorder.  The ALJ found Plaintiff was vague and not forthcoming with specifics about her actual or unstated income.  Tr. 20.  There is not any evidence, however, that Plaintiff was even capable of recalling and accurately communicating specific facts, dates, and amounts of income.  In any event, the fact that a mentally disabled claimant is unable to recall specific dates or account for specific amounts of income is not a valid reason for completely rejecting other portions of her testimony.  When determining whether Plaintiff's testimony regarding income was credible, the ALJ should have considered Plaintiff's mental deficiencies and her limitations as to understanding and communicating.  *Cf. Legin v. Schweiker*, 654 F.2d 631, 636 (9th Cir. 1981)(when deciding

whether a claimant is at fault in an overpayment case, the ALJ must consider the nature of the claimant's disability, her education, past experiences, and other limitations that are apparent in her testimony).

On this record, the Court finds the ALJ erred when she failed to give clear and convincing reasons supported by substantial evidence in the record for discounting Plaintiff's testimony and failed to consider Plaintiff's mental disabilities when evaluating her credibility.

**III.  <u>The ALJ failed to consider evidence provided by Dr. Sacks</u>**.

In the Ninth Circuit, an ALJ can reject the opinion of an examining physician only by "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Maganallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  Clear and convincing reasons are required when the opinion is not contradicted by another physician.  *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).  The ALJ is not bound by the opinion of an examining physician and may reject opinions unsupported by clinical notes or findings.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  Nevertheless, the ALJ is generally required to consider and to set out clear and convincing reasons for rejecting evidence provided by an examining physician.  *See Lester v. Chater*, 81 F.3d at 834 (when

16 - OPINION AND ORDER

"the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'").

Here when determining Plaintiff's eligibility for SSI payments, the ALJ failed to consider the medical reports provided by Dr. Sacks, consultive medical examiner.  In July 2003 Dr. Sacks noted Plaintiff "continues to live with her niece" and "suggested she has lived with her niece or her mother for several years."  Tr. 146.  Dr. Sacks also noted Plaintiff's appearance "suggested she was sober," and Plaintiff reported drugs had not been a problem for her since December 2002 when she completed treatment.  Tr. 148.  Dr. Sacks's observations corroborate Plaintiff's testimony, and the ALJ does not cite any conflicting evidence in the record.

Pointing to evidence that Plaintiff made misrepresentations to Dr. Sacks, the Commissioner suggests Dr. Sacks's reports are unreliable.  The ALJ did not, however, present this as a basis for rejecting Dr. Sacks's reports.  In fact, the ALJ did not even mention Dr. Sacks's reports.  The Court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006)(citation and quotation omitted).

Accordingly, the Court rejects the Commissioner's *post hoc* argument for disregarding Dr. Sacks's report and finds the ALJ

erred when she failed to consider Dr. Sacks's opinion and
reports.

## IV.  __The ALJ provided adequate reasons for rejecting the lay-witness statements of Plaintiff's niece.__

Lay testimony is competent evidence that the ALJ must
consider unless the ALJ "expressly determines to disregard such
testimony and gives reasons germane to each witness for doing
so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See
also Merrill ex rel Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th
Cir. 2000)("[A]n ALJ, in determining a claimant's disability,
must give full consideration to the testimony of friends and
family members."). The ALJ's reasons for rejecting lay-witness
testimony must be "specific." *Stout v. Comm'r, Soc. Sec. Admin.*,
454 F.3d 1050, 1054 (9th Cir. 2006).

Here the Court concludes the ALJ provided specific reasons
for giving "little weight" to a letter written by Plaintiff's
niece. Tr. 21. The ALJ noted the record was held open to allow
Plaintiff to submit lay-witness evidence to support her
testimony. Tr. 21. Plaintiff submitted an equivocal letter from
her niece in which she stated Plaintiff "has lived with me off
and on at various times . . . ." Tr. 242. The ALJ gave this
letter "little weight" because it was vague and did not include
any specific dates. Tr. 21. The Court agrees the letter of
Plaintiff's niece is not helpful in determining whether, when,
and how long Plaintiff lived with family and friends.

Accordingly, the Court concludes the ALJ provided legally sufficient reasons for giving "little weight" to the lay-witness statements of Plaintiff's niece.

**V.    <u>The ALJ's errors were not harmless</u>.**

The Commissioner acknowledges the ALJ relied on evidence not in the record, but argues the error was harmless because the ALJ's ultimate eligibility and credibility determinations are, nonetheless, supported by substantial evidence in the record. The Commissioner points out that Plaintiff admitted to staying in motels, earning $100 to $200 per month from prostitution, and using $100 of crack cocaine daily.  Relying on *Carmickle v. Commissioner,* the Commissioner contends "the relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, . . . [but] whether the ALJ's decision remains legally valid, despite such error."  533 F.3d 1155, 1162 (9th Cir. 2008).

In *Carmickle*, the Ninth Circuit found the ALJ erred when he discounted the claimant's credibility based on the claimant's conservative course of treatment and his receipt of unemployment benefits.  *Id*. at 1161-62.  Nevertheless, the Ninth Circuit found those errors were harmless because "the ALJ's remaining reasoning *and ultimate credibility determination* were adequately supported by substantial evidence in the record."  *Id.* at 1163 (emphasis in original).  Thus, as long as there is substantial evidence in the

record to support the ALJ's credibility determination, the error does not negate the ALJ's ultimate credibility finding.   *Id*.

As an initial matter, the Court notes *Carmickle* did not involve an agency decision based on extra-record evidence.   It is one thing to find that an invalid credibility determination is harmless error under the circumstances of *Carmickle,* but quite another to conclude an ALJ may rely on extra-record evidence to deny benefits to a person who the agency has already found to be disabled.   As noted, the agency's regulations, the case law, and due process require the SSA to make its public-benefits eligibility decisions based on the record.   The Commissioner does not cite nor is the Court aware of any authority to the contrary. Thus, this Court is not persuaded *Carmickle*'s harmless-error standard applies under these circumstances where the ALJ's decision is based on evidence that is not part of the record.

Even if the Court interpreted *Carmickle* as generally supporting application of the harmless-error standard under the circumstances of this case, the Court concludes the ALJ's "remaining reasoning and ultimate [eligibility] determination" are not adequately supported by substantial evidence in the record.   *See Carmickle*, 533 F.3d at 1163.   The ALJ failed to identify any evidence that is actually in the record to support the conclusion that Plaintiff's testimony was filled with inconsistencies.   Similarly, the ALJ's finding that Plaintiff was

20– OPINION AND ORDER

merely vague and not forthcoming about her actual or unstated
income is not supported by substantial evidence in the record in
light of the fact that the ALJ failed to take into account
Plaintiff's mental disability though a mentally disabled claimant
with pre-school mathematical abilities and a "severe deficit in
communication" cannot be expected to accurately recall specific
facts, dates, expenses, and amounts earned.  Again, the ALJ does
not identify specifically any evidence in the record to support
her conclusion that Plaintiff was actually "not forthcoming."
Without "section D of the modular disability folder," the ALJ's
credibility determination is not supported by *any* evidence in the
record.  Accordingly, the Court concludes the ALJ's reliance on
extra-record material does not constitute harmless error.

Furthermore, absent "section D of the modular disability
folder," there is not any evidence in the record to support the
ALJ's finding that "from April 2003 through October 2004
[Plaintiff] stayed *only* in motels paid for with money she
acquired from shoplifting and she had not stayed with family or
friends," Tr. 20 (emphasis added), or that Plaintiff stayed in
motels "*throughout* 2003 and 2004 at a rate of $55 a night," Tr.
20-21 (emphasis added).  The record reflects Plaintiff stayed at
motels "less" than half the time during the period at issue and
otherwise stayed with family and friends, Tr. 257-58; that,
according to Plaintiff's niece, Plaintiff lived with her "off and

21- OPINION AND ORDER

on" during the period at issue and also stayed with other family members, Tr. 242; and that Dr. Sacks noted in July 2003 that Plaintiff "suggested she has lived with her niece or her mother for several years." Tr. 146. As noted, however, the ALJ did not address that evidence directly.

In addition, even though Plaintiff admitted earning $100 to $200 a month from prostitution, she also testified she had not engaged in prostitution since 2003 and the record does not reflect she engaged in prostitution during any part of 2004. Tr. 256. The ALJ noted Plaintiff told a treatment counselor in May 2004 that she had been using $100 crack cocaine daily for the last two years. Tr. 21, 166-69. This statement, however, is inconsistent with Dr. Sacks's July 2003 observation that Plaintiff appeared clean and sober. Tr. 148. Moreover, the ALJ did not attempt to determine whether or how much crack cocaine Plaintiff may have continued to use after leaving the treatment center in May 2004. Considering Plaintiff's undisputed mental disabilities, her single statement by itself is not reliable and does not constitute "substantial evidence" that Plaintiff's income exceeded the SSI payment amounts for every month from April 2003 through October 2004. Thus, the Court finds there is not substantial evidence in the record to support a finding that Plaintiff's income exceeded the allowable SSI payment from April 2003 through October 2004 in light of the fact that the ALJ did

not consider Plaintiff's mental disabilities and their effect on her ability to recall and to articulate specific facts, dates, expenses, and income.

In summary, the Court concludes on this record that the ALJ erred when he relied on extra-record evidence to discount Plaintiff's credibility and failed to consider Plaintiff's mental disabilities. The Court also finds there is not any other substantial evidence in the record to support a decision to reduce Plaintiff's SSI payments to zero for each and every month from April 2003 through October 2004, and, therefore, the ALJ's errors were not harmless. *See Carmickle*, 533 F.3d at 1162.

**IV.    Remand for further proceedings is required**.

Having found the ALJ erred, the court must determine whether this case should be remanded for further proceedings or for an award of benefits. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court and generally turns on the utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178-79 (9th Cir. 2000). The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

Here the Court has concluded the ALJ erred when she found Plaintiff was ineligible for SSI payments for the entire period of April 2003 through October 2004 and discredited Plaintiff's testimony based on substantial evidence that is not part of the record.  It is, therefore, clear that there is additional, relevant evidence that should be included in the record before it can be relied on.

The Court also has concluded the ALJ erred when he failed to consider Plaintiff's mental disability in his evaluation of her credibility and failed to consider whether Plaintiff is capable of accurately recalling dates, expenses, and/or amounts of income in light of her pre-school mathematical ability and mental deficiencies.

The Court, therefore, finds on this record that additional proceedings are necessary.  Accordingly, the Court remands this matter for further administrative proceedings consistent with this Opinion and Order.


<u>**CONCLUSION**</u>

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to 42 U.S.C.

§ 405(g) for further administrative proceedings consistent with

this Opinion and Order.

IT IS SO ORDERED.

DATED this 18th day of May, 2010.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge


25 - OPINION AND ORDER